PEOPLE v. BERGEN.

*(Supreme Court, General Term, Fifth Department.　January 22, 1892.)*

CRIMINAL LAW—NEW TRIAL—INSUFFICIENT EVIDENCE.

A new trial will be granted, for want of sufficient evidence, where a conviction is had on defendant's confession of a crime previously committed, and evidence properly excluded, but plainly presented to the minds of the jury in various ways by the prosecution.

Appeal from court of sessions, Monroe county.

From a judgment convicting William Bergen of petit larceny, and from an order denying a new trial, he appeals.　Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*P. Chamberlain, Jr.,* for appellant.　*George P. Benton,* Dist. Atty., for the People.

DWIGHT, P. J.　The defendant was indicted, in separate counts, for burglary, receiving stolen goods, and petit larceny.　He was convicted of petit larceny upon evidence which, if it proved anything, was as much evidence of the burglary as of the larceny.　A burglary was committed by breaking in a shop window, and a piece or roll of cloth was abstracted.　A week afterwards the defendant went, in the evening, in company with a man who had the cloth, to a tailor shop, where the man tried to sell it; and this is the extent to which what may properly be called evidence in the case goes, to connect the defendant with either the burglary or larceny charged.　Beyond this the narrative shows that, at 2 or 3 o'clock in the morning after the visit to the tailor's, a policeman by the name of Wadick, who died before the trial, was met on his beat in the same vicinity with the piece of cloth in his arms, and told the witness who met him how he came by it.　There was a persistent effort on the part of the prosecution to show what Wadick's statement was. That evidence was, of course, excluded, but the proposition was plainly presented to the minds of the jury, and was industriously inculcated in the case, by the form of questions asked, and by incidental reference to it in various ways,—that Wadick, if he had been alive, would have testified that he met a man at that early hour in the morning with the roll of cloth in his arms, that he tried to arrest him, but that the man knocked him down with the roll, and escaped, leaving the cloth in the policeman's hands.　There is no evidence whatever in support of this story, but there is reason to suppose that the prosecution had the full benefit of it, with the jury.　Indeed, we find in the charge of the court the statement to the jury that, "as appears from the evidence, it was expected that if the officer, Wadick, had been here to testify, the people could have proved" the facts embraced in the above proposition.　The defendant was arrested nearly three weeks later, when Wadick went with another policeman to see him in jail, and the other policeman was permitted to testify that there Wadick stated to him that the defendant was the man who knocked him down with the roll of cloth.　The police justice was also a witness, and testified that, at the time when the defendant was before him, he asked the defendant why he struck the officer with the cloth, (a fact of which there was no evidence before the magistrate,) and that the defendant said he was not guilty of stealing it, and he wanted to get away. The police justice confesses to great indistinctness of recollection as to what took place, while the attorney who appeared for the defendant testifies that he pleaded not guilty for him, and that the defendant was not sworn, and made no statement whatever.　This is all the evidence of any kind which tends to inculpate the defendant in the crime charged; but (what was probably of more serious consequence to him) he took the stand as a witness in his own behalf, and on his cross-examination testified that he had already served a term of imprisonment in the state-prison for the crime of larceny committed

in the city of New York. And this fact, we think, it may have been, together with the information of what Officer Wadick would have testified to if he had been living, which, in the estimation of the jury, gave the needed weight to the evidence to justify a verdict against the defendant. Indeed, we have found it impossible to read the brief record of this case without being strongly persuaded that this young man was found guilty of the crime charged upon him upon evidence which was not in the case, and his confession of a crime previously committed.

A man who has once expiated a crime of which he was guilty ought to have a fair chance to make and maintain a good character thereafter. It is well known that such is not the case; that nearly all the avenues of respectability are closed against such a man; and that he is constantly the object of suspicion and distrust. This, as the learned court said to the jury in the present case, "is human nature." But one thing, at least, ought to be assured to the man so unfortunately situated,—that, suspected and distrusted as he may be, he shall not be judicially determined to be guilty of crime except upon evidence which fairly meets the requirements of those rules of law which are designed to protect the innocent. For the want of such evidence in this case, we think the motion for a new trial should have been granted. The judgment and order appealed from should be reversed. Judgment and order appealed from reversed, and a new trial granted in the court of sessions of Monroe county. All concur.